**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 20 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JAVIER ORTIZ,

Defendant - Appellant.

No. 98-6271

(W.D. Oklahoma)

(D.C. No. CR-94-115-C)

**ORDER AND JUDGMENT** *

Before **ANDERSON** , **KELLY** , and **BRISCOE** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal.   See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.

Javier Ortiz seeks a certificate of appealability which would permit him to appeal the district court's decision to deny his motion, filed pursuant to 28 U.S.C.

---

*This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

§ 2255, to vacate, set aside, or correct his sentence. For the reasons set forth below, we deny Ortiz's request for a certificate of appealability, and dismiss his appeal.

## BACKGROUND

This case began when Ortiz's wife, a soldier stationed at Fort Sill, Oklahoma, was murdered in April 1994. At the time, Ortiz was attending Cameron University in Lawton, Oklahoma, on a military scholarship. On September 8, 1994, after a joint investigation by the Federal Bureau of Investigation (FBI) and military officers, Ortiz and a co-defendant, Kevin Moore, were charged with conspiracy to commit first degree murder, in violation of 18 U.S.C. § 1117, and with committing first degree murder, in violation of 18 U.S.C. §§ 1111, 7, and 2. The government's theory of the case was that Moore killed Ortiz's wife on instructions from Ortiz, as part of a plot to obtain the benefits from the victim's military life insurance policies. In October 1994, Ortiz's co-defendant, Moore, was convicted by a jury of first-degree murder and conspiracy to commit first-degree murder.

Even before the indictment against him was obtained, Ortiz sought private legal representation. His family came up with the money to hire Mack Martin, who represented himself to be one of the best defense attorneys in Oklahoma.

Martin told Ortiz that his fee for pre-indictment representation would be $10,000. Ortiz and his family paid this amount. After the indictment was issued, Martin informed Ortiz that his fee for representation through trial would be another $90,000. Ortiz and Martin entered into a contract for legal services, under which Martin agreed to represent Ortiz through trial, and Ortiz agreed to pay the $90,000. When this appeal began, Ortiz had paid Martin approximately $89,500 of the agreed-upon $100,000 legal fee.

On December 7, 1994, after a motion to suppress evidence was denied by the district court, Ortiz entered into a plea bargain with prosecutors. Under the terms of the plea agreement, the government dismissed all of the outstanding counts against Ortiz, and obtained a new indictment against him on the lesser charge of solicitation of a crime of violence, a violation of 18 U.S.C. §§ 373(a) and 7. Ortiz pled guilty to the lesser charge of solicitation.

Some months later, without firing Martin, Ortiz hired another attorney and filed a motion to withdraw his plea of guilty. However, on March 1, 1995, only a few days after filing the motion to withdraw, Ortiz withdrew the motion. On March 10, 1995, the district court held a sentencing hearing at which it sentenced Ortiz to twenty years' imprisonment, the statutory maximum. In addition, the district court sentenced Ortiz to three years' supervised release, and imposed a fine. The district court entered judgment in the case on March 16, 1995.

Ortiz, who continues to maintain his innocence despite the guilty plea, did not file a notice of appeal within the ten-day period following the entry of judgment in his case. The reasons for this failure to mount a timely appeal constitute the major issues of contention in this case.

Finally, on February 10, 1997, Ortiz filed a notice of appeal. We dismissed his appeal as untimely on May 21, 1997. United States v. Ortiz, No. 97-6075, slip op. (10th Cir. May 21, 1997); see Supp. R. Tab 269.

On March 10, 1997, Ortiz and his father filed a civil complaint in federal court in Los Angeles, grounded in federal anti-racketeering law (RICO), against attorney Martin and the other attorneys who had represented Ortiz in the criminal case, United States District Judges Robin J. Cauthron and Wayne A. Alley, and John and Jane Does 1-10, alleging a vast conspiracy to defraud Ortiz and his family out of the $100,000 legal fee charged by Martin. In that action and in the proceedings in this case before the district court below, Ortiz and his family maintained that Martin had rendered sub-standard legal services, did not conduct his own investigation of the events in question, and was generally overpaid for the services he provided. The California district court dismissed the RICO complaint in May 1997, and the Ninth Circuit affirmed the dismissal. Ortiz v. Martin, 1998 WL 479445 (9th Cir. July 24, 1998).

On April 21, 1997, [1] Ortiz filed a motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255. In his motion, he asserted approximately 25 different grounds for relief. His chief complaints appeared to be ineffective assistance of counsel, outrageous conduct on the part of the government, and lack of jurisdiction over his criminal case. After filing his motion, Ortiz moved for an evidentiary hearing, for appointment of counsel, and for recusal of district court Judge Robin J. Cauthron on the ground that she was a named defendant in the then-pending California civil case. The district court denied the motion for recusal, but granted Ortiz's motions for appointment of counsel and for an evidentiary hearing.

After several continuances, the evidentiary hearing was held on June 17, 1998. By this time, after appointment of counsel, the issues in the case had been distilled to one major issue: whether attorney Martin had been constitutionally ineffective for failing to mount a timely appeal. Martin asserted that he had explained to Ortiz the advantages and disadvantages of mounting an appeal in this

---

[1]The motion was signed by Ortiz on April 21. It was not filed with the court, however, until April 30. We have held that petitioners whose convictions become final on or before April 24, 1996, "must file their § 2255 motions before April 24, 1997." United States v. Simmonds, 111 F.3d 737, 746 (10th Cir. 1997). However, under the doctrine of Houston v. Lack, 487 U.S. 266 (1988), a pro se prisoner's notice of appeal is deemed "filed" when it is delivered to prison officials for forwarding to the district court. Because the government has not raised any timeliness issues in this case, we presume that Ortiz delivered his motion to the proper prison authorities in a timely manner.

case, and that Ortiz had not asked Martin to file an appeal. Martin admitted that there had been some discussion of an eventual § 2255 motion, but maintained that Ortiz had never instructed him to mount a direct appeal. Ortiz, by contrast, maintained that he had indeed asked Martin to file an appeal in his criminal case. Thus, the district court's task at the evidentiary hearing was to decide, after hearing witness testimony and making credibility determinations, whether the facts supported Martin's or Ortiz's version of the case.

Martin and Ortiz both testified at the hearing. Ortiz also produced several other witnesses, who testified, in essence, that Ortiz had told them that he planned to appeal his conviction. None of the offered witnesses, however, could testify that Martin had personally told them that a direct appeal was pending, or that they had overheard Ortiz instruct Martin to file an appeal.

At the conclusion of the hearing, the district court stated that it "believe[d] Mr. Martin and [didn't] believe Mr. Ortiz. And that [belief] is supported by everything that has been submitted . . . ." III R. at 93. The district court further found that "Mr. Martin fully explained the appeal rights to Mr. Ortiz as this case proceeded" and that "at the entry of his plea and at the time of his sentence, [Mr. Ortiz] was aware of his right to appeal and had declined it, had waived it, had said no and had then had discussions with Mr. Martin regarding a future 2255 motion." Id. at 93-94.

Two days after the hearing, on June 19, 1998, the district court filed a written order documenting its findings at the hearing, and formally denying Ortiz's § 2255 motion. The court stated again that Martin's testimony was more believable than Ortiz's, and was supported by "the circumstances of defendant's very favorable plea agreement, [and] the withdrawal of defendant's motion to withdraw plea." I R. Tab 321, at 2. Judgment was entered in the case that same day.

Ortiz now appeals from the district court's denial of his § 2255 motion. Ortiz presents only one issue to us on appeal: whether Ortiz was denied his right to effective assistance of counsel because Martin failed to mount a direct appeal.

## DISCUSSION

"A defendant's right to effective assistance of counsel applies not just at trial but also on direct appeal." Romero v. Tansy, 46 F.3d 1024, 1030 (10th Cir. 1995) (citing Evitts v. Lucey, 469 U.S. 387, 396 (1985)). In order to prevail on a claim of ineffective assistance of counsel, a defendant ordinarily must show that (1) his attorney's representation "'fell below an objective standard of reasonableness,'" and (2) "his counsel's deficiencies were prejudicial to his defense." Romero, 46 F.3d at 1029 (quoting Strickland v. Washington, 466 U.S. 668, 688 (1984)). However, where a petitioner claims that his attorney was

-7-

ineffective for failing to mount an appeal, prejudice is presumed, and the petitioner need only show that his counsel's performance was objectively unreasonable. See Abels v. Kaiser, 913 F.2d 821, 823 (10th Cir. 1990). Thus, the only question we must consider is whether Martin's performance in failing to perfect Ortiz's direct appeal was objectively unreasonable.

We note that although the "ultimate question of whether a defendant received ineffective assistance of counsel is an issue of law which we review de novo," we must give due deference to the district court's findings of fact, and "we review a district court's factual findings based on live testimony presented at the evidentiary hearing only for clear error." Romero, 46 F.3d at 1028.

In the context of advising a client of appellate rights and mounting a direct appeal, we have stated that an attorney's performance is reasonable where the attorney (1) "explain[s] the advantages and disadvantages of an appeal"; (2) "provide[s] the defendant with advice about whether there are meritorious grounds for appeal and about the probabilities of success"; and (3) "inquire[s] whether the defendant wants to appeal the conviction; if that is the client's wish, counsel must perfect an appeal." Baker v. Kaiser, 929 F.2d 1495, 1499 (10th Cir. 1991).

The district court found that Martin's testimony that he had advised Ortiz of his right to appeal, had discussed with him the merits of any such appeal, and

that Ortiz at no time expressed to Martin a desire to mount a direct appeal was highly credible and supported by other circumstances in the case.  I R. Tab 321, at 2-3; III R. at 93-94.  The district court's determination that these events occurred as Martin testified they did is a finding of fact to which we must defer.  Ortiz argues that "[a]n examination of the facts adduced at the evidentiary hearing show the court's finding was erroneous."  Appellant's Br. at 12-13.  We cannot agree.

Martin directly testified that he advised Ortiz of his right to appeal and discussed with him the merits of such an endeavor.  III R. at 47-48, 50-53, 61.  Martin also stated that Ortiz, after having been advised of his rights and appellate prospects, did not instruct him to mount a direct appeal of his convictions.        Id. at 43, 64.  As indicated above, the district court stated that "at the entry of his plea and at the time of his sentence, [Mr. Ortiz] was aware of his right to appeal and had declined it, had waived it, had said no and had then had discussions with Mr. Martin regarding a future 2255 motion."      Id. at 94.  Thus, the record provides support for the district court's findings of fact.  Such supported findings are not clearly erroneous.

Thus, Martin met the standard articulated in      Baker v. Kaiser  .  His performance was not constitutionally ineffective.  He told Ortiz of his right to appeal and that his appeal would likely not succeed.  Armed with this information, Ortiz chose not to instruct his attorney to file a direct appeal, but

rather to wait and file a § 2255 motion. Under such circumstances, the attorney's performance was within reasonable limits.

## CONCLUSION

For the foregoing reasons, we conclude that Ortiz has failed to make a substantial showing of the denial of a constitutional right. Accordingly, we DENY Ortiz's request for a certificate of appealability and DISMISS his appeal.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge